IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LILLE B. VICKERS, | ) |
| Plaintiff, | ) |
| Vs. | ) CASE NO.: 2:06cv865-WKW |
| MERCK & CO., INC., | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship and Plaintiff claims an amount in controversy exceeding $75,000.00.

### PARTIES

1. Plaintiff, Lillie B. Vickers, is over the age of 19 years, and is a resident citizen of Montgomery, Alabama. Lillie B. Vickers suffered an ischemic stroke on or about August 5, 2002, while using the prescription pain reliever, Vioxx®.

2. Defendant, Merck & Co., Inc., is a corporation of the state of New Jersey, with its principal place of business in New Jersey. At all relevant times herein, Merck was in the business of promoting, manufacturing and distributing Rofecoxib, known more commonly as Vioxx®. Defendant does business in …state… and at all relevant times hereto, marketed, promoted, warranted and sold Vioxx® in …state….

### FACTS

3. This action arises from the use of Rofecoxib or Vioxx®, a medication for

relief of pain from osteoarthritis, menstrual cramps, rheumatoid arthritis and acute severe pain.

4. Defendant, Merck, obtained FDA approval on Vioxx® in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999. Vioxx® is a brand name used by Merck to market and distribute Rofecoxib.

5. Plaintiff was prescribed Vioxx® on or around April 4, 2000, for arthritis. Plaintiff used the Vioxx® as recommended for relief of arthritis pain.

6. On or about August 5, 2002, while using Vioxx®, Plaintiff suffered an ischemic stroke.

7. Defendant Merck distributed and sold Vioxx® to patients needing pain relief. Vioxx® was approved for marketing based on information in the New Drug Application, which was on a fast-track, 6-month approval process to FDA.

8. Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular adverse health effects, Defendant promoted and marketed Vioxx® as safe and effective for patients like Plaintiff.

9. Defendant concealed the cardiovascular risks associated with Vioxx® because a successful launch of Vioxx® was viewed as critical for Merck, and safety concerns over hypertension, edema and/or cardiovascular events would have drastically impacted Merck's positioning in the market as compared to its competition drug, Celebrex placed into the market by Pharmacia and Pfizer, three months prior to the launch of Vioxx®.

10. Merck chose to place these adverse health risks on its consumers despite

its knowledge at product launch and in post-marketing data thereafter that use of Vioxx® carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials conducted by Merck, and Merck studies which showed statistically significant increases in adverse cardiovascular events among Vioxx® users.

11. In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx® use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to further accurately publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association.

12. Merck continued to deny the ill health effects associated with Vioxx® while at the same time making a profit through its sales. Merck engaged in a massive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was a $2 billion profit in 2000 alone to Merck and an approximately 23 percent share of the market.

13. The profits to Merck were realized as it continued to withhold relevant data from patients and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx® consumption over Naproxen consumption.

14. In approximately September of 2001 Merck received a Warning Letter

from FDA stating that Merck's "promotional activities and materials...are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations." The FDA stated that Merck's campaign minimized "potentially serious cardiovascular findings" from a Vioxx® study and misrepresented Vioxx's "safety profile." The FDA concluded that Merck's claim that "Vioxx has a 'favorable safety profile' is simply incomprehensible given the rate of myocardial infarction and serious cardiovascular events compared to naproxen."

15. At all times relevant to this litigation, Merck had a very aggressive marketing program which involved financial incentives to sales teams, recruiting new sales representatives, and a massive advertising and sampling program. As a result of such marketing, Vioxx® gained a significant market share that it would not have gained if Merck had not suppressed information about Vioxx® and/or made false representations of Vioxx's superiority and efficacy.

16. If Defendant had not engaged in this conduct, patients and physicians would have switched from Vioxx® to safer products or refrained wholly from its use.

17. From 1999 through September 30, 2004, Defendant engaged in a scheme of marketing, distributing and selling Vioxx® under the guise that it was safe and efficacious for patients.

18. Plaintiff alleges that the marketing strategies, including the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted consumers to induce them to ask for and use Vioxx®. At the time the Defendant distributed, manufactured and marketed Vioxx®, Defendant intended that Plaintiff would rely on the marketing, advertisements and product information propounded by Defendant.

Plaintiff did not know, and could not have known, that Vioxx® was unsafe or that it had caused Plaintiff's injuries and damages, until September 30, 2004.

19.    On September 30, 2004, Merck voluntarily removed Vioxx® from all markets in the United States because of an increased risk of serious cardiovascular events in association with its use.

## COUNT ONE

### Alabama Extended Manufacturer's Liability Doctrine

21.    Plaintiff adopts and incorporates by reference all the above allegations.

22.    At all times material hereto, the Defendant has engaged in the business of selling, distributing, manufacturing, marketing and promoting Vioxx®, which is unreasonably dangerous, and therefore defective.

23.    At all times material hereto, Vioxx® was sold, distributed, manufactured, promoted and marketed by the Defendant and was expected to reach, and did reach consumers, including the Plaintiff without substantial change in the condition in which it left the possession of Defendant.

24.    At all times material hereto, Vioxx® was unreasonably dangerous, and therefore defective, because:

a.    Vioxx® can cause hypertension, strokes, heart attacks, and death.

b.    Vioxx® was marketed and promoted for use as a pain reliever and by design and formulation, carried an unreasonable and unnecessary risk of serious injury and death. The risk of harm far outweighed the benefit of use.

    c.    Vioxx® was insufficiently and inadequately tested, yet Defendant promoted it as being pharmaceutically tested and safe for use.

    d.    The instructions and warnings that accompanied Vioxx® were inadequate to fully apprise the user of the full nature and extent of the risks and dangerous side effects associated with the use.

    e.    Vioxx® was marketed and promoted direct to the consumer as being safe for treatment of pain, without risk of serious injury and death.

25.    At all times relevant here, there existed safer methods and products for pain relief.

26.    As a direct and proximate result of the actions and inactions of the Defendant as set forth above Plaintiff has sustained injuries and is entitled to damages enumerated below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck & Co., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT TWO

### Failure to Warn

26.    Plaintiff adopts and incorporates by reference all the above allegations.

27.    Vioxx® can be unreasonably dangerous, even when used for its intended purpose.

28.    Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Defendant had knowledge of the dangerous risks and side effects of Vioxx®.

29. Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to Plaintiff

30. Defendant had a continuing duty to warn consumers, including the Plaintiff, of its product, and the risks and dangers associated with it, and negligently and/or wantonly breached its duty as follows:

a. Failed to include adequate warnings with the medications that would alert consumers and physicians to the dangerous risks and serious side effects of Vioxx®.

b. Failed to provide adequate post-marketing warnings and instructions after the Defendant knew or should have known of the significant risks of heart attack, stroke, blood clots and injury from the use of Vioxx®.

c. Failed to adequately warn Plaintiff and physicians that Vioxx should not be used by patients with already compromised cardiovascular conditions.

d. Failed to inform Plaintiff and physicians that Vioxx® had not been adequately and thoroughly tested for safety as a pain reliever.

31. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiff has sustained injuries and damages as listed below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT THREE

### Breach of Warranty of Merchantability

32. Plaintiff adopts and incorporates by reference all the above allegations.

33. When Defendant placed Vioxx® into the stream of commerce, it knew that it would be used as a pain medication, and expressly and impliedly warranted to Plaintiff that use of Vioxx® was a safe and acceptable means of relieving pain and discomfort.

34. Plaintiff reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and upon the express and/or implied warranty that Vioxx® was of merchantable quality and fit for use to relieve pain symptoms.

35. In fact, Vioxx® was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purposes for which it is used, in that Vioxx® caused serious injuries and damages. The medication breached the warranties because it was unduly dangerous in expected use and did cause undue injuries to the Plaintiff.

36. As a direct and proximate result of the breach of warranties by the Defendant Plaintiff has sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck & Co., Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

## COUNT FOUR

### Negligence

37. Plaintiff adopts and incorporates by reference all the allegations above.

38. Defendant negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx®, in the state of Alabama.

39. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of its medications.

40. Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiff in the following ways:

   a. Failed to use reasonable care to test Vioxx® which, if properly performed, would have shown that Vioxx® had serious side effects, including, but not limited to, risk of stroke, heart attack, blood clots and death;

   b. Failed to use reasonable care to give warnings and instructions with Vioxx®.

   c. Failed to use reasonable care to design and manufacture a pain reliever safe for its intended use.

   d. Failed to use reasonable care in the marketing and promotion of Vioxx®.

41. Defendant knew or should have known that Vioxx® had unreasonably dangerous risks and caused serious side effects of which Plaintiff and physicians would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

42. As a direct and proximate result of the negligent actions and inactions of the Defendant as set forth above, Plaintiff has sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck & Co., Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

## COUNT FIVE

### Wantonness

43. Plaintiff adopts and incorporates by reference all the allegations above.

44. Defendant wantonly and recklessly manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Vioxx®, in the state of Alabama.

45. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of Vioxx®.

46. Defendant breached its duty and was wanton and reckless in its actions, misrepresentations, and omissions toward Plaintiff in the following ways:

   a. Failed to test Vioxx® which, if properly performed, would have shown that Vioxx® had serious side effects, including, but not limited to, risk of stroke, heart attack, blood clots and death;

   b. Failed to give full and adequate warnings and instructions with Vioxx®.

   c. Failed to design and manufacture a pain medication safe for its intended use.

   d. Failed to truthfully market and promote Vioxx®.

47. Defendant knew that Vioxx® had unreasonably dangerous risks and caused serious side effects of which Plaintiff and physicians would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

48. As a direct and proximate result of the wanton and reckless actions and

inactions of the Defendant as set forth above, Plaintiff has sustained injuries and damages as set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of the Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT SIX

### Fraud, Misrepresentation and Suppression

49. Plaintiff adopts and incorporates by reference all the allegations above.

50. Defendant fraudulently, intentionally and/or negligently misrepresented to Plaintiff, the FDA, and general public, the safety of Vioxx© and/or fraudulently, intentionally and/or negligently concealed material including adverse information regarding the safety of Vioxx®.

51. Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Vioxx® had defects, dangers, and characteristics that were other than what the Defendant had represented to the FDA, and the consuming public, including the Plaintiff and physicians. Specifically, the Defendant misrepresented to Plaintiff, the FDA, the consuming public, and physicians that:

    a. Vioxx®, when used as recommended, was safe for relief of pain symptoms.

    b. Vioxx® had been pharmaceutically tested and was safe for use as a pain reliever, even in persons with cardiovascular conditions.

    c. Vioxx® was fully and adequately tested.

    d.    Vioxx® had no serious adverse cardiovascular effects.

    e.    Vioxx® was safe and effective.

52.    Defendant knew or should have known that these representations were false and that Plaintiff would rely on them, leading to the use of Vioxx®. Defendant knew that physicians had been told the same false and fraudulent information about Vioxx®, and that Plaintiff and the prescribing physician would be relying on information, advertisements and statements made by Defendant about the use, safety and efficacy of Vioxx®.

53.    At the time of Defendant's fraudulent misrepresentations and active concealment, Plaintiff was unaware of the falsity of the statements being made and believed them to be true.

54.    Plaintiff and physicians justifiably relied on and/or was induced by the misrepresentations made by Defendant of the safety and use of Vioxx®, and in fact, used Vioxx® as recommended.

55.    Defendant concealed the truth from Plaintiff, the consuming public and physicians about the real safety and risks of Vioxx®.

56.    Defendant had a post-sale duty to warn Plaintiff and the public about the potential risks and complications associated with Vioxx® in a timely manner. Much of the true information about Vioxx® has only become known since its withdrawal on September 30, 2004.

57.    The misrepresentations and active concealment by the Defendant constitutes a continuing tort against Plaintiff.

58.    As a direct and proximate result of the misrepresentations and

concealment of the Defendant as set forth above, Plaintiff has sustained injuries and damages set forth below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff demands judgment of Defendant, Merck & Co., Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

### CLAIM FOR DAMAGES

Plaintiff, Lillie B. Vickers, has sustained injuries and damages, and does make claim for these:

a.  Reasonable and necessary health care expenses incurred in the past;

b.  Reasonable and necessary health care expenses which will be incurred in the future;

c.  Physical pain and suffering in the past;

d.  Physical pain and suffering which will be endured in the future;

e.  Mental anguish suffered in the past;

f.  Mental anguish which will be endured in the future;

g.  Physical disability and impairment, past and future;

h.  All other incidental and consequential damages, fees and expenses.

/s/ Leila H. Watson
LEILA H. WATSON    (WAT052)
Attorney For Plaintiffs
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
(205) 328-2200

*Elizabeth A. Ellis*
ELIZABETH A. ELLIS (ELL049)
Attorney For Plaintiffs
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
(205) 328-2200

**PLAINTIFF DEMANDS A TRIAL OF ALL ISSUES BY STRUCK JURY.**

LEILA H. WATSON

**SERVICE HAS BEEN WAIVED BY MERCK & CO., INC.**

**PURSUANT TO CMO 15, ENTERED IN MDL 1657 IN RE: VIOXX PRODUCT LIABILITY LITIGATION, EASTERN DISTRICT OF LOUISIANA, MERCK & CO., INC. AGREES THAT SERVICE CAN BE ACCOMPLISHED IF PLAINTIFF EMAILS THE FILED COMPLAINT AND THE RULE 4(d) NOTICE TO MDL@wcsr.com. PLAINTIFF WILL ACT PURSUANT TO CMO 15.**